AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America | |
| v. | Case No. 2:22-mj-01075-DUTY |
| MARK JAMES CALVIN, | |
| Defendant(s) | |

FILED
CLERK, U.S. DISTRICT COURT
03/16/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___dj___ DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
3/16/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___vam___ DEPUTY

# CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of November 9, 2021, in the county of Los Angeles in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) | Possession With Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Justin Francis
Complainant's signature

Justin Francis, FBI Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: March 16, 2022

City and state: Santa Barbara, CA (lal)
~~Los Angeles, California~~

[signature: Louise A. LaMothe]
*Judge's signature*

Hon. Louise A. LaMothe, U.S. Magistrate Judge
*Printed name and title*

AUSA: Rachel N. Agress (x0487)

**AFFIDAVIT**

I, Justin Francis, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for Mark James CALVIN ("CALVIN") for a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute Methamphetamine.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a Task Force Officer ("TFO") with the Santa Maria Resident Agency and have been so employed since September 2021. I have been a duly sworn Deputy with the San Luis Obispo County Sheriff Department since January 2020. I am currently assigned as a TFO for the FBI. In addition to my time employed at this agency, I was previously employed as a Police Officer for the Pismo Beach Police Department for four years and Fullerton Police Department for three years.

4. In March of 2012, I graduated from the Golden West Community College Basic Law Enforcement Academy in Huntington Beach, California. At the Basic Law Enforcement Academy, I completed approximately 780 hours of instruction in basic police practices and procedures. I hold a Peace Officers Standards and Training Basic Certificate ("POST").

5. Upon graduation, I was assigned to the Fullerton Police Department as a Police Officer and worked uniformed patrol for three years. I then transferred to the Pismo Beach Police Department Patrol Division as a police officer and worked uniformed patrol for a total of two years. While on patrol, I conducted, as well as participated in, numerous preliminary investigations including, but not limited to, missing persons investigations, crimes of burglary, robbery, sexual assaults, identity theft, larceny, assaults, auto-theft, weapon violations, mail thefts, and various narcotics related offenses.

6. I worked approximately two years as a Gang Task Force investigator for the San Luis Obispo County Sheriff's Department. As a Gang Detective, I assisted with investigations on documenting gang members for previously reported incidents in various crimes including, but not limited to, wanted documented gang members and/or associates, gang enhancements, assaults, larceny, and narcotics investigations. I have personally arrested and/or investigated subjects for the possession of stolen property and thefts.

7. I have received numerous hours of in-service training, consisting of briefings, lectures, online training and classes

on various subjects including, but not limited to, gangs, firearms laws, DNA collection, synthetic drugs, coroner investigations, search and seizure, narcotics update, domestic violence, narcotic trafficker's update, pharmaceutical drug abuse training, identity theft, drug abuse recognition, Officer Involved Shooting training, Field Sobriety Tests/DUI, training related to the field of narcotics and investigations of cellular phones and mobile devices, narcotic investigations including surveillance and arrest of narcotic suspects, and the handling of, weighing, and field testing suspected narcotics.

### III.  SUMMARY OF PROBABLE CAUSE

8.   In late October 2021, two unrelated individuals reported to law enforcement that they had knowledge that CALVIN was distributing narcotics, including Xanax and fentanyl.  CALVIN resides in San Luis Obispo County, California, and is subject to pretrial release search terms without cause pursuant to state court charges for possession of narcotics, and was subject to those terms as of November 2021.

9.   On November 9, 2021, members of the San Luis Obispo Sheriff's Department searched CALVIN's residence pursuant to his state search terms and seized a box containing suspected methamphetamine from CALVIN's bathroom.  A chemical analysis later conducted by the DEA Southwest Laboratory showed that substance inside tested positive as approximately 353.38 grams of pure methamphetamine.

10.  CALVIN was arrested for a violation of California Health and Safety Code Section 11351.  Following an advisement

of his Miranda rights, CALVIN agreed to speak with law enforcement. CALVIN advised that he intended to travel to Oakland by the end of the week to pick up a large quantity of fentanyl and bring it back to the area for distribution and sale and admitted to selling fentanyl in the past. CALVIN also admitted that another individual had asked CALVIN to store the methamphetamine for him/her.

### IV. STATEMENT OF PROBABLE CAUSE

11. Based on my review of law enforcement reports, conversations with other law enforcement agents, conversations with Individual B,[1] surveillance of CALVIN, and my own knowledge of the investigation, I am aware of the following:

---

[1] Individual B is a former confidential source. He had an agreement with the FBI to provide information and assistance to law enforcement relating to narcotics investigations from approximately late 2020 to September 2021. Individual B was terminated in September 2021 for cause, due to a probation violation related to narcotics. Individual B has a criminal history consisting of prior convictions for narcotics use, possession and distribution, driving under the influence, and theft of property offenses. Prior to his termination, Individual B was providing information and assistance in connection with unrelated narcotics investigations in exchange for consideration in several pending cases where charges have been brought against Individual B relating to narcotics possession and distribution. Individual B has provided information in the past in other investigations and has not provided any information that was later determined to be false or otherwise unreliable. Individual B provided the tip in this case following his termination, unsolicited by law enforcement, and his motivation for doing so is not known at this time.

### A. Law enforcement received information regarding CALVIN's illegal narcotic activities.

12. On or about October 21, 2021, Individual A[2] reported to members of the San Luis Obispo Sherriff's department that CALVIN had provided approximately 81.31 grams of Xanax pills to Individual A in exchange for $1,500.

13. On October 25, 2021, Individual B reported to federal law enforcement that CALVIN had communicated to Individual B, in person, that CALVIN had a kilogram of fentanyl which he intended to distribute. CALVIN also indicated to Individual B that he would be willing to sell fentanyl to Individual B. Individual B also reported that CALVIN regularly traveled to the "Bay Area" to source his fentanyl.

14. On October 25, 2021, pursuant to the information provided by Individual A[3] that CALVIN was in possession of illegal narcotics, San Luis Obispo Sheriff's ("SLOS") Special Operations Unit conducted surveillance on CALVIN at his

---

[2] Individual A, who is believed to be a drug user, claimed that CALVIN had taken his/her wallet which contained $1,500 and provided her in return with a bag of counterfeit Xanax pills stamped "S 90 3," which, based on my training and experience, is a stamp intended to look like the typical stamp on Alprazolam or Xanax. The pills weighed approximately 81.31 grams without packaging and have been seized by law enforcement. Their street value is approximately $1,500. The bag field tested positive for Etizolam, an alternative to Xanax.

[3] On November 10, 2021, the Honorable Louise A. LaMothe issued a warrant authorizing the placement of a GPS tracking device on CALVIN's vehicle in case number 2:21-mj-05183. On November 23, 2021, the Honorable John E. McDermott issued a warrant to search CALVIN's cell phone in case number 2:21-MJ-5378. In the affidavits in support of both warrants, the government mistakenly stated that SLOS relied on information provided by Individual B in performing the October 25 surveillance, when SLOS actually relied on information provided by Individual A.

residence at 105 Oak Street, Apartment A, Paso Robles, CA (the "Residence"), where CALVIN resides with a relative.

        **B.    Court orders CALVIN subject to pretrial release search terms.**

15. On October 8, 2021, a complaint was filed against CALVIN in People of the State of California vs. Mark James Calvin, Case No. 21 M06940 (San Luis Obispo Superior Court) in relation to narcotics-related conduct by CALVIN on or about June 30, 2021.

16. On or about October 27, 2021, CALVIN was arraigned in that case and ordered to comply with the following conditions of pretrial release: "Not use or possess any controlled substances, or associate with persons or be in place where illegal drugs are present," and "Submit upon demand of Peace/Probation officer to search of person, personal property, residence and/or vehicle owned or being operated by defendant without warrant with or without probable cause, any time of day or night."

        **C.    CALVIN's person, vehicle and residence is searched, and approximately 353.38 grams of pure methamphetamine are seized.**

17. On November 9, 2021, pursuant to the information provided by Individuals A and B that CALVIN was in possession of illegal narcotics, and the pretrial release search terms referenced above, members of the SLO Special Operations Unit conducted surveillance at the Residence. At approximately 12:20 p.m., CALVIN was observed leaving the Residence and getting into his vehicle. As CALVIN drove away in his vehicle, law enforcement initiated a stop and detained CALVIN pursuant

the terms of his San Luis Obispo Superior Court ordered search terms. Law enforcement searched CALVIN's person, his vehicle, and the Residence.

18. Pursuant to the search, law enforcement found and seized: a pink box containing suspected methamphetamine, located in the bathroom of the Residence packed in twelve clear plastic bags; several clear empty Ziploc plastic bags in CALVIN's bedroom; and two digital scales (one in the bedroom and one in the kitchen). In addition, law enforcement recovered clear plastic bags, with residue of a white powdered substance coating the inside of the bags. Based on my training and experience, these items are the type of items that an individual engaged in narcotics trafficking would have in their possession and utilize to measure and package narcotics for sale and distribution. Law enforcement also recovered approximately $4,700 in U.S. currency on CALVIN'S person and a phone from the passenger seat of CALVIN's vehicle near the center console. Three of the bags of suspected methamphetamine were field test and tested positive for methamphetamine.

19. A chemical analysis later conducted by the DEA Southwest Laboratory showed that substance inside the twelve bags tested positive as approximately 353.38 grams total of pure methamphetamine.

**D.  CALVIN's Post Arrest-Statements**

20. In a spontaneous statement, CALVIN stated that he knew there was some "shit" in the bathroom cabinet of his residence.

Based on my training and experience, CALVIN was using the term "shit" as slang for methamphetamine.

21. In a recorded interview, I advised CALVIN of his Miranda rights. CALVIN waived his Miranda rights and agreed to speak with law enforcement.

22. In response to the question as to how CALVIN came to be in possession of approximately $4,700, CALVIN replied that an individual had just dropped it off to him. CALVIN explained he is known around the county as an individual who is able to source narcotics, specifically fentanyl. CALVIN locates dealers who are interested in purchasing distribution-level amounts of narcotics, and coordinates with them to collects money from them in advance, drives to Oakland (in the Northern District of California) to pick up the contraband, and then brings it back to San Luis Obispo County (in the Central District of California). CALVIN affirmed that he was acting as a middleman and procuring narcotics at a cheaper rate from his contacts. Toward the end of the interview, CALVIN advised he was preparing to travel to Oakland by the end of the week to pick up a large quantity of fentanyl and bring it back to the area for distribution and sale.

23. CALVIN also admitted to selling fentanyl in the past and advised that his phone would contain communications regarding his sales of illegal narcotics. CALVIN provided law enforcement with the passcode to his phone.

24. CALVIN also admitted that another individual had asked CALVIN to store the methamphetamine for him/her.

## V. TRAINING AND EXPERIENCE ON DRUG OFFENSES

25. Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

   a. Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

   b. Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs. The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

   c. Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices. This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal. In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or

others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

       d. Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices. Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

       e. Individuals engaged in the illegal purchase or sale of drugs and other contraband often use multiple digital devices.

## VI. CONCLUSION

26. For all of the reasons described above, there is probable cause to believe that CALVIN has committed a violation of 21 U.S.C §§ 841(a)(1): Possession with Intent to Distribute Methamphetamine.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 16th day of
March, 2022.

_[signature: Louise A. Lamothe]_
THE HONORABLE LOUISE A. LAMOTHE
UNITED STATES MAGISTRATE JUDGE